UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KENNETH G. STEEPROW,

          **Plaintiff,**

-vs-                                 **Case No.  6:06-cv-1369-Orl-19GJK**

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

          **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1.     Motion For Reconsideration Of Magistrate's Report And Recommendation By Plaintiff Kenneth G. Steeprow (Doc. No. 41, filed Dec. 26, 2007);

2.     Response To Plaintiff's Motion For Reconsideration Of Magistrate's Report And Recommendation By Defendant Michael J. Astrue (Doc. No. 42, filed Jan. 9, 2008); and

3.     Motion For Oral Argument By Plaintiff (Doc. No. 43, filed Jan. 31, 2008).

**Background**

Plaintiff Kenneth G. Steeprow has brought this action against the Commissioner of the Social Security Administration ("SSA"), appealing the SSA's decision to deny Plaintiff's Application for disability benefits.  (Doc. No. 9.)  United States Magistrate Judge Dietrich entered a Report and Recommendation on Plaintiff's appeal, recommending that the decision of the SSA be affirmed. (Doc. No. 38 at p. 9.)  Plaintiff has since filed an Objection to Judge Dietrich's Report and Recommendation, and Defendant has filed a Response in opposition.  (Doc. Nos. 41, 42.)

## Standard of Review

A district court's review of a final decision by the SSA is limited to determining: (1) whether the factual findings of the SSA are supported by substantial evidence; and (2) whether the SSA correctly applied the appropriate legal standards. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Regarding factual findings, a court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Despite the wide scope of review, however, the SSA's factual findings are presumed correct and should be affirmed so long as the findings are supported by substantial evidence,[1] even if the court finds that the proof preponderates in the opposite direction. *Dyer*, 395 F.3d at 1210. On the other hand, no such presumption attaches to the SSA's legal reasoning, and the court must reverse if the SSA incorrectly applied the law or failed to provide sufficient reasoning to determine whether it correctly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

A party seeking to challenge the findings in a Report and Recommendation of a United States Magistrate Judge must file "written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir.1989)). If a party makes a proper objection, the district court must conduct a *de novo* review of the portions of the Report to which objection is made. *Id.* at 783-84.

---

[1] "Substantial evidence" is "something more than a mere scintilla, but less than a preponderance." *Dyer*, 395 F.3d at 1210 (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

The district court may "accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id.* at 784.

**Analysis**

In his Objection to Judge Dietrich's Report and Recommendation, Plaintiff alleges a number of errors. (Doc. No. 41.) Specifically, Plaintiff argues that he was not afforded a full hearing before an Administrative Law Judge ("ALJ"), the record provided by the SSA to the ALJ and the District Court is incomplete, and the SSA erred in denying Plaintiff disability benefits. (*Id.*) The Court considers these arguments in turn.

**I.      Hearing**

An individual whose application for Social Security benefits has been denied may request a hearing before an ALJ.  42 U.S.C. § 405(b)(1) (2006); 20 C.F.R. §§ 404.929, 404.930 (2007).  At the hearing, as is the case throughout the application process, the applicant bears the burden of proof.  20 C.F.R. § 404.704.  Federal regulation provides, "When evidence is needed to prove your eligibility or your right to continue to receive benefit payments, you will be responsible for obtaining and giving the evidence to us." *Id.*  Another provision states, "Generally, you will be asked to give us by a certain date specific kinds of evidence or information to prove you are eligible for benefits. If we do not receive the evidence or information by that date, we may decide you are not eligible for benefits." *Id.* § 404.705.  Thus, while an applicant is entitled to a hearing before an ALJ, the applicant bears the burden of establishing eligibility.

Plaintiff timely requested a hearing before an ALJ on June 10, 2005.  (Doc. No. 1-3 at pp. 14-16.)  Subsequently, the SSA sent Plaintiff a letter confirming this request and included information about what to expect during the hearing.  (*Id.* at pp. 17-18.)  This letter explained that

Plaintiff was entitled to a representative, and that the ALJ would consider evidence in Plaintiff's file as well as "any additional evidence [Plaintiff] provide[s]." (*Id.* at p. 17.) Furthermore, "Evidence you cannot get to us before the hearing may be brought to the hearing. You may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at your hearing." (*Id.* at p. 18.)

ALJ Holder held a hearing on Plaintiff's Application on October 14, 2005. (Doc. No. 20 at pp. 164-72.) During this hearing, ALJ Holder asked Plaintiff if he was represented and explained that Plaintiff had a right to a representative. (*Id.* at pp. 166-67.) Plaintiff stated that he understood this right but nevertheless wanted to proceed without a representative. (*Id.* at p. 167.) Plaintiff was then sworn and gave about ten minutes of testimony. (*Id.* at pp. 167-72.) ALJ Holder asked Plaintiff if he had any additional evidence to provide that was not in his record. (*Id.* at p. 168.) Plaintiff indicated that he had subpoenaed additional documents but had not yet received them. (*Id.*) ALJ Holder sympathized with Plaintiff's position and indicated the SSA would try again to subpoena Plaintiff's former employer. (*Id.*) ALJ Holder did warn Plaintiff, however, that without these records Plaintiff would not have a claim. (*Id.* at p. 171.) Since Plaintiff had no additional evidence to offer at that time, ALJ Holder took Plaintiff's Application under advisement. (*Id.* at p. 172.)

Plaintiff argues that the ALJ "dismissed" or "cancelled" this hearing so that the ALJ himself could obtain more evidence; therefore, Plaintiff did not receive a complete hearing. (Doc. No. 9 at p. 5, ¶ 31; Doc. No. 26 at p. 8, ¶ 19; Doc. No. 41 at p. 3, ¶ 3.) In making this argument, however, Plaintiff appears to misinterpret the ALJ's subpoena *power* with a *duty* to discover evidence that Plaintiff is unable to provide. (Doc. No. 9 at p. 5, ¶ 31; Doc. No. 26 at pp. 7-8, ¶ 19; Doc. No. 41

at pp. 3-4, ¶ 3.)   The burden to produce evidence of employment entitling Plaintiff to benefits remains at all times with Plaintiff.  20 C.F.R. §§ 404.704, 404.705.

Plaintiff also claims that this hearing was inadequate and did not constitute a final hearing as required by law.  (Doc. No. 41 at p. 3, ¶ 3.)  However, ALJ Holder gave Plaintiff notice of the hearing and an opportunity to be heard and to produce evidence.  (*See* Doc. No. 20 at pp. 166-72.) Plaintiff in fact appeared before the ALJ and gave testimony.  (*See id.*)  The fact that Plaintiff was unable to provide evidence beyond what was already in the record does not mean that ALJ Holder failed to conduct a hearing.  Thus, Plaintiff received a hearing before an ALJ on his Application for disability benefits as required by law, and the Court rejects Plaintiff's arguments otherwise.

## II.       Completeness of the Record

Plaintiff next argues that the SSA relied upon an incomplete record when considering his Application. (Doc. No. 26 at pp. 2-3, ¶ 2.)  Further, Plaintiff claims the SSA has provided this Court with an incomplete and misleading record.  (*Id.* ¶¶ 1-3, 8-9, 12, 17-18.)  First, as explained above, the burden to produce evidence is on Plaintiff, not the SSA or its officers.  20 C.F.R. §§ 404.704, 404.705.  Secondly, the current appeal involves Plaintiff's Application for Disability Insurance Benefits that was dated April 20, 2004.  (Doc. No. 20 at pp. 15-18.)  The evidence that Plaintiff claims has been "suppressed" by the SSA involves previous Applications filed by Plaintiff.  (*See* Doc. No. 26 at pp. 12-24.)  The substance of the remainder appears to be either in the SSA's record in some other form or acquired by Plaintiff recently.  (*See id.* at pp. 25-48.)  In any event, Plaintiff has provided this Court with the documents he feels were unfairly suppressed, and the Court will accordingly review the record as a whole.  (Doc. Nos. 23, 26.)

III.     **The SSA's Decision on Disability Insurance Benefits**

Plaintiff claims that the SSA erred in denying him disability insurance benefits.  ALJ Holder affirmed this denial after finding that Plaintiff had worked less than twenty quarters in the forty quarters ending on the date which Plaintiff claimed to have become disabled.  (Doc. No. 20 at p. 14.) Plaintiff argues that the determinative forty quarter period should instead end on the date he filed his Application in 2001 and not the date of the onset of his disability.  (Doc. No. 41 at pp. 5-6, ¶ 6.) Plaintiff also appears now to claim for the first time that he was injured in October 2000 but did not become disabled until October 2001.  (*Id.*)

A.     **Eligibility Requirements**

To qualify for disability insurance benefits, an individual must meet two preliminary requirements.  First, the individual must be "fully insured."  42 U.S.C. §§ 414(a), 423(a)(1). Secondly, the individual must qualify for disability benefits.  *Id.* § 423(c)(1)(B)(i).  A person qualifies if he or she had not less than twenty quarters of coverage during the forty-quarter period which ends with the quarter in which he or she became disabled ("the 20/40 rule").  *Id.*; 20 C.F.R. 404.130(b).[2]  A quarter of coverage ("QC") is a three month period of time in which an individual is employed and receiving at least a certain amount of taxable earnings.  42 U.S.C. § 413(a), (d); 20 C.F.R. § 414.140(a).  The SSA determines how many QCs with which to credit an individual on an

_____

[2]     The period of consideration for eligibility ends with the quarter in which an applicant claims onset of a disability because the definition of disability is "a severe impairment(s) that makes you unable to do your past relevant work or any other substantial gainful work that exists in the national economy."  20 C.F.R. § 404.1505(a).  Thus, an individual seeking disability benefits is necessarily claiming an inability to work; therefore, evidence of work done after the onset of the disability is inherently inconsistent with this claim and accordingly is not counted towards qualification under the 20/40 rule.

annual basis by looking at the individual's total income for the year.  20 C.F.R. §§ 404.140(c), 404.143(a).

In every Application for disability insurance benefits in the record, Plaintiff claims that he became unable to work because of a disabling condition on October 3, 2000.  (Doc. No. 1-2 at p. 10 (Application dated October 9, 2001); Doc. No. 20 at p. 15 (Application dated April 20, 2004); Doc. No. 26 at p. 22 (Application dated March 19, 2004).)[3]  Therefore, the quarter in which Plaintiff became disabled ended on December 31, 2000 and under the 20/40 rule, Plaintiff must have twenty QCs in the forty-quarter period which ends on that date.  This means that Plaintiff must have twenty QCs between January 1, 1991 and December 31, 2000 to qualify for disability insurance benefits.

### B.    Plaintiff's Eligibility

It is undisputed that Plaintiff had four QCs for each of the years 1997, 1998, 1999, and 2000, totaling sixteen (16) QCs. (Doc. No. 20 at p. 101.)  Plaintiff disputes, however, the calculation of his QCs for the years 1994, 1995, and 1996.  (Doc. No. 26 at pp. 2-3, ¶ 2.)[4]  First, Plaintiff claims that his reported earnings of $1,500 for 1995 should amount to four QCs for that year rather than two.  (*Id.* at p. 5, ¶¶ 6, 8.)  Secondly, Plaintiff claims that he should receive credit for work done in 1994 and 1996. (*Id.* at pp. 2-3, ¶ 2.)

---

[3]    There are three Applications in the record.  The first is an Application dated October 9, 2001 which appears to have been signed by Plaintiff on November 12, 2001. (Doc. No. 1-2 at p. 12.)  The second is an Application dated March 19, 2004 which appears to have been signed by Plaintiff on March 28, 2004.  (Doc. No. 26 at p. 24.) The third is an Application dated April 20, 2004 which appears to have been signed by Plaintiff on that same date.  (Doc. No. 20 at p. 17.)  The denial of the third Application is the subject of the present appeal.

[4]    Plaintiff's claims for credits in 2001 are irrelevant as they fall after the time Plaintiff claimed his disability began.  To the extent Plaintiff now claims an onset date in October 2001, this allegation was not previously made before the SSA, and therefore the Court disregards it.

### 1.      1995

Title 42, Section 413 of the United States Code provides:

(1)      The amount of wages and self-employment income which an individual must have in order to be credited with a quarter of coverage in any year under subsection (a)(2)(A)(ii) of this section shall be $250 in the calendar year 1978 and the amount determined under paragraph (2) of this subsection for years after 1978.

(2)      The Commissioner of Social Security shall, on or before November 1 of 1978 and of every year thereafter, determine and publish in the Federal Register the amount of wages and self-employment income which an individual must have in order to be credited with a quarter of coverage in the succeeding calendar year. . . .

42 U.S.C. § 413(d)(1)-(2).  In 1995, the amount of earnings a person had to have to be credited with a QC was $630.  1995 Cost-of-Living Increases and Other Determinations, 59 Fed. Reg. 54,464-03, 1994 WL 589793 (Oct. 31, 1994).   Plaintiff reported $1,500 in earnings for 1995; therefore, Plaintiff was entitled to receive two (2) QCs for that year.  Plaintiff's claim that he was entitled to four QCs in 1995 is incorrect.  Thus, Plaintiff was credited with the correct number of QCs in 1995.

### 2.      1994 and 1996

As explained above, it is an Applicant's burden to prove eligibility for disability insurance benefits.  20 C.F.R. §§ 404.704, 404.705.  Therefore, Plaintiff has to prove that he worked in 1994 and 1996.   In the three Applications submitted to the SSA, Plaintiff made several different statements about his work for those two years.  In his first Application, Plaintiff claimed, "I did not work from 1981 to 1994[5] I was a quest (sic) of the State and lived outside the US for a while.  I also was injured in a car accident in 1991 and could not work.  I tried working in 1995 but had to stop

---

[5]      This appears to be a typographical error and should instead be "1984."

because of my injury.  I didn't work in 1996."  (Doc. No. 1-2 at p. 12.)  In his second Application,

Plaintiff stated:

> 1981–middle of 1984 I was in prison; middle of 1984–86 worked for "The Roofing
> Company["] and a suit is currently pending in Federal Court for payroll fraud, as I
> did work for them and there is no posting for those wages; 1987–1983[6] I was in
> business for myself and had a series of losses into the millions; 1994–1996 not
> working much, lost business.

(Doc. No. 26 at p. 24.)  Plaintiff repeats this summary in his third and final Application dated and

signed on April 20, 2004.  (Doc. No. 20 at p. 17.)

In Plaintiff's original "Request for Court Review," Plaintiff made allegations that he worked

for The Roofing Company in 1994 and 1996 and should receive at least four QCs for that work.

(Doc. No. 1 at p. 11, ¶ 52.)  He appears to have abandoned that argument in his "Amended Request

for Court Review" and instead pursued the theory that he should receive credit for work done in

2001.  (Doc. No. 9.)  However, in his "Brief" filed in opposition to the SSA's decision, Plaintiff

appears to reassert his claim that he worked for The Roofing Company in 1994 and 1996.  (Doc. No.

26 at pp. 2-3, ¶ 2.)  However, Plaintiff includes no evidence to support this claim of employment.

In its Notice of Reconsideration, the SSA informed Plaintiff that its records indicated that

no earnings had been reported for Plaintiff in the years 1994 and 1996.  (Doc. No. 20 at p. 101.)

Furthermore, the SSA explained:

> Your protest read, "that I was employed in 1994 and 1996–2000 by the
> Roofing Co.  My average wage was $1,000.00 per week."  If these were wages
> covered under Social Security (FICA taxes were paid), this would almost certainly
> add the two quarters of coverage needed.  Since this new statement contradicted
> statements you made on your application, "1983–1993 I was in business for myself
> and had a series of losses into the millions; 1994–1995 not working much, lost
> business," we requested additional proof to wit: "We will require proof of the alleged

---

[6]        This also appears to be a typographical error and should instead be "1993."

Roofing Company FICA taxed earnings. The most common proof would be W-2s or paycheck stubs for the years in question. If you did not retain these, use another sheet of paper and give us as much detailed information about how much you made, when you worked, etc. It would also be helpful if you supplied the employer identification number or address of the Roofing Company."

Your response, in relevant part, was to provide us with additional evidence of 2001 earnings. This does not impact the decision on 20/40 since 2001 is outside the period of consideration.

(Doc. No. 20 at p. 102.) After a hearing and review of the record, ALJ Holder found, "The claimant was not able to provide the Social Security Administration with the evidence requested." (*Id.* at p. 13.) Thus, ALJ Holder concluded, "Given the lack of additional evidence, the Administrative Law Judge affirms the reconsideration determination that the claimant is not entitled to Social Security Disability Insurance Benefits." (*Id.* at p. 14.)

Plaintiff has offered no evidence beyond his own statement that he worked in 1994 and 1996. Furthermore, he has previously made inconsistent statements about his employment during those years. Accordingly, this Court finds that substantial evidence supports the SSA's finding that Plaintiff had only eighteen (18) quarters of coverage in the forty-quarter calendar period ending with the quarter that Plaintiff alleges he became disabled. This Court further finds that the SSA correctly applied the appropriate legal standards in reaching this conclusion.

## Conclusion

Based on the foregoing, the Court **OVERRULES** Plaintiff's Objection to the Report and Recommendation of the United States Magistrate Judge (Doc. No. 41) and **AFFIRMS** and **ADOPTS** the Report and Recommendation of Judge Dietrich affirming the decision of the SSA (Doc. No. 38). Plaintiff's Motion for Oral Argument is **DENIED AS MOOT**. (Doc. No. 43.) The Clerk of the Court is directed to enter judgment for Defendant and close the file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 7 , 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party